**UNITED STATES of America**
v.
**Ethan STANGLAND.**
**UNITED STATES of America**
v.
**Max MUNK.**
**Civ. A. Nos. 838, 844.**

United States District Court
N. D. Indiana, Fort Wayne Division.
Jan. 13, 1956.

Casper M. Murphy, U. S. Dept. of Agriculture, Chicago, Ill., Phil M. Mc-Nagny, Jr., U. S. Atty., Fort Wayne, Ind., John E. Logue, Asst. U. S. Atty., Fort Wayne, Ind., for plaintiff.

Robert E. Albright, Lewis E. Basom, Columbus, Ohio, Clifford E. Simon, Jr., Fort Wayne, Ind., for defendant.

SWYGERT, Chief Judge.

These are actions for the collection of wheat marketing quota penalties assessed by the Government under the Agricultural Adjustment Act of 1938, 7 U.S.C.A. § 1281 et seq. It is claimed that these penalties are due because the defendants seeded for harvest in 1954 an acreage of wheat on their respective

farms which was in excess of their wheat acreage allotments, and thereby produced a farm marketing excess of wheat.

The pleadings in these cases are substantially identical. The Government has filed a motion to strike the First and Third Defenses of defendants' answers, and to require them to file a more definite statement of their Fourth Defense. It also has objected to defendants' interrogatories numbered One to Eight, Seventeen and Eighteen. The Government also has filed a motion for summary judgment. These matters have all been heard and now stand submitted for decision.

### The Motion To Strike

The First Defense of defendants' answer reads as follows:

"The defendant, as to the allegations contained in paragraph II of the complaint, denies that all the conditions precedent required by the Act were performed by the Secretary of Agriculture, namely that as required by 7 U.S.C. § 1336, a referendum 'shall be conducted' by the Secretary of Agriculture 'between the dates of the issuance of any proclamation of any national marketing quota for wheat and July 25th' and this condition precedent was not performed in accordance with the statutory requirements."

The Government contends that the First Defense does not conform to the requirements of Rule 9(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. This rule provides that "A denial of performance or occurrence [of conditions precedent] shall be made specifically and with particularity." It is my view that defendants have substantially complied with the rule by their assertion that the referendum of the wheat producers was not conducted "between the dates of the issuance of any proclamation of any national marketing quota for wheat and July 25th". However, another reason was discussed at the hearing which I think requires the granting of the motion. This is particularly so in light of the fact that defendants have not indicated any desire to amend their First Defense. Section 336 of the Agricultural Adjustment Act, 7 U.S.C.A. § 1336, provides that "Between the date of the issuance of any proclamation of any national marketing quota for wheat and July 25, the Secretary shall conduct a referendum, by secret ballot, of farmers who will be subject to the quota specified therein to determine whether such farmers favor or oppose such quota." The date of the referendum for the 1954 wheat crop was changed by an Act of Congress enacted July 14, 1953. 67 Stat. 152. This Act provides that "the referendum with respect to the 1954 crop of wheat may be held as late as August 15, 1953." According to 18 F.R. 5707 the referendum with respect to the 1954 wheat crop was held on August 14, 1953. 44 U.S.C.A. § 307 provides that "the contents of the Federal Register shall be judicially noticed." Since it positively appears that the time within which the referendum covering the 1954 wheat crop could be held was extended by Congress beyond July 25, the First Defense, even though it complies with Rule 9(c) of the Federal Rules of Civil Procedure, does not as a matter of law constitute a defense. For that reason, rather than for the one stated, the motion to strike the First Defense is granted.

The motion also seeks to strike the Third Defense for the reason that it fails to state a defense sufficient in law. This defense reads as follows:

"Incorporating herein all the allegations of the first and second defenses as though rewritten herein, the defendant has never accepted any benefits either directly or indirectly nor registered or rendered himself subject to the Agricultural Adjustment Act of 1938 as amended or of the regulations thereunder and is not subject to said Act."

There is nothing in the Agricultural Adjustment Act that requires the pro-

ducer of wheat to accept benefits by way of loans or payments or to register before he is subject to the marketing quota provisions or to the penalties of the Act. A producer of wheat is subject to a penalty on the farm marketing excess of wheat grown on his farm during any marketing year for which quotas are in effect.[1] In other words, to be subject to a penalty only two conditions are required: (1) the person against whom the penalty is asserted must be a producer of wheat, and (2) he must have produced an excess of farm marketing wheat over his quota. For this reason the allegations in the Third Defense that the defendant "has never accepted any benefits either directly or indirectly nor registered" are not material and do not constitute a defense in law. The motion to strike this portion of the Third Defense is granted. It may plausibly, however, be argued that the remaining allegation, i. e., that the defendant has never "rendered himself subject to the Agricultural Adjustment Act of 1938, as amended, or of the regulations thereunder and is not subject to said Act" raises an issue of material fact; that is, was the defendant a producer and did he produce a farm marketing excess of wheat? For that reason the motion to strike this part of the Third Defense is denied.

The Motion To Make More Definite

 The Fourth Defense reads as follows:

"Incorporating herein all the allegations of the first, second and third defenses as though rewritten herein, the defendant states that the Agricultural Adjustment Act of 1938 as amended and the regulations thereunder, is in violation of the Constitution of the United States and the amendments thereto, namely Article 1 § 8, Article 1 §§ 7 and 9, Article 4 § 2, Article 1 § 1, and Articles 5, 7, 8, 9, and 10 of the amendments to the Constitution of the United States and is

repugnant to Article 13 § 1 of the United States Constitution."

The motion asks that defendants file a more definite statement of this defense, specifically stating in what respects the Agricultural Adjustment Act and the regulations thereunder violate the provisions of the Constitution of the United States. The defendants have attempted to comply with this request by filing an amended answer. The motion is denied.

Objections To Interrogatories

 The Government objects to the following interrogatories propounded by the defendants:

"1. How was the wheat acreage allotment computed for this farm?

"2. What was the manner of determining the yield per acre of wheat for this farm?

"3. What was the actual yield per acre of the farm if the answer to 2 was an estimate?

"4. What was the date the 1954 wheat crop acreage was measured?

"5. Was the measurement for the wheat acreage by observation, or by physical measurement?

"6. Who measured the acreage for the 1954 wheat crop?

"7. What was the manner of determining the normal wheat yield per acre for this particular farm?

"8. How was the alleged marketing excess computed for this farm?"

The basis of the Government's objection is that these interrogatories relate solely to matters over which the Court has no jurisdiction in this case. An analysis of the interrogatories shows that they have to do with the manner and method of determining defendants' wheat acreage allotments and farm marketing excess of wheat. I agree with the Government's contention that the Court in these suits has no jurisdiction over the determination of these matters. Sections 363, 365, 366 and 367 of the

---

1. 7 U.S.C.A. § 1340(2).

Agricultural Adjustment Act, 7 U.S.C.A. § 1363, § 1365, § 1366 and § 1367, cover the procedure a producer must follow in obtaining a review of his farm marketing quota. Section 363 permits a review of the quota by a local review committee composed of three farmers. Section 365 provides that a farmer dissatisfied with the determination of the review committee may within a limited time file a suit either in a federal or a state court to have such determination reviewed. Section 366 outlines the procedure to be followed in such judicial review and Section 367 provides in pertinent part:

"Notwithstanding any other provision of law, the jurisdiction conferred by said sections to review the legal validity of a determination made by a review committee pursuant to said sections shall be exclusive. No court of the United States or of any State shall have jurisdiction to pass upon the legal validity of any such determination except in a proceeding under said sections."

The method outlined by these sections to test the determination of a farm marketing quota is exclusive. Therefore, the information which the defendants seek by these interrogatories is not material to any of the issues in this case. The defendants cannot defend by putting into issue the validity of the determinations of their quotas. That issue can only be raised by a proceeding under sections 365 and 366. This holding is directly supported by Lee v. Roseberry, D.C.E.D.Ky.1950, 94 F.Supp. 324, and United States v. R. L. Dixon & Bro., D.C.N.D.Tex.1940, 36 F. Supp. 147.

 Objection is also made to defendants' Interrogatory 17 which inquires:

"Does the plaintiff claim the defendant has accepted any payments or loans under the A.A.A. Act of 1938?"

The objection must be sustained for the same reasons that required the striking of the Third Defense.

 The last objection is directed to defendants' Interrogatory 18 which asks:

"Does the plaintiff claim that the defendant has marketed any wheat from this farm?"

By an amendment to the Agricultural Adjustment Act on May 26, 1941, 55 Stat. 203, 7 U.S.C.A. § 1340, the Act provides:

"Notwithstanding the other provisions of this chapter—

"(1) The farm marketing quota under this chapter for any crop of wheat shall be the actual production of the acreage planted to wheat on the farm, less the normal production or the actual production, whichever is the smaller, of that acreage planted to wheat on the farm which is in excess of the farm acreage allotment for wheat. * * *

"*The normal production, or the actual production, whichever is the smaller, of such excess acreage is hereinafter called the 'farm marketing excess' of corn or wheat, as the case may be.* * * *

"(2) During any marketing year for which quotas are in effect, *the producer shall be subject to a penalty on the farm marketing excess of corn and wheat.* * * *

"(3) The farm marketing excess for corn and wheat shall be *regarded as available for marketing,* and the penalty and the storage amount or amounts to be delivered to the Secretary of the commodity shall be computed upon the normal production of the excess acreage. * * * Upon failure to store or deliver to the Secretary the farm marketing excess within such time as may be determined under regulations prescribed by the Secretary, the penalty computed as aforesaid shall be paid by the producer. * * *"
(Emphasis supplied.)

By the terms of the statute, the penalty is on the farm marketing excess of wheat. The term "farm marketing

excess" of wheat is either the normal or actual production of wheat on the acreage in excess of the farm marketing quota assigned to the producer. The farm marketing excess of wheat is, by law, wheat "regarded as available for marketing." Thus it makes no difference whether the wheat produced on the excess acreage is actually marketed or not. Once it is produced it is subject to the penalty no matter what the farmer does with it thereafter. Since marketing of the excess production is not a requisite to the imposition of the marketing quota penalties, the information which the defendants ask by Interrogatory 18 is not material to any issue in the case. The objection is sustained.

### Motion For Summary Judgment

Both defendants in their answers admit the jurisdiction of the Court of the subject matter of these actions under the provisions of Section 376 of the Agricultural Adjustment Act of 1938, 7 U.S.C.A. § 1376, and under 28 U.S.C. § 1345. They also admit that they reside within the jurisdiction of the Court.

In their Fifth, and last, Defense defendants allege that they are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the other paragraphs of the complaint; moreover, they deny these other allegations. However, the pleadings on file, the interrogatories propounded by the Government, the answers given thereto by the defendants, and the affidavits attached to the motion for summary judgment show that there is no genuine issue as to any material fact in either case.

In accordance with the provisions of 44 U.S.C.A. § 307 the Court takes judicial notice of the fact that after the performance of all conditions precedent specified in the Act and the regulations issued thereunder, the marketing provisions of the Act were made effective with respect to the 1954 wheat crop, and that, pursuant to the Act, the Secretary of Agriculture thereafter issued regulations and made certain de-terminations pertaining to acreage allotments and marketing quotas concerning the 1954 wheat crop.

In the Munk case the following material facts are shown: Wheat was seeded for harvest in 1954 on the defendant's farm and the crop was harvested. The defendant was the producer of the wheat raised on his farm. A wheat acreage allotment of 21 acres was established for this farm for the 1954 crop of wheat and the defendant was given written notice thereof. The Noble County, Indiana, Agriculture Stabilization and Conservation Committee, pursuant to the applicable regulations, established this 1954 wheat acreage allotment. It also established that the normal yield per acre was 24 bushels and that the normal production of the defendant's acreage allotment was 504 bushels; a written notice of these determinations and the 1954 farm marketing quota for wheat for defendant's farm was mailed to defendant by registered mail on July 15, 1954. The envelope containing the notice was returned to the County Committee marked "Refused". The defendant applied for a review of his quota by the Review Committee in September, 1954, and the Review Committee established his wheat acreage allotment at 27 acres. In October, 1954, the County Committee mailed to the defendant a revised notice of determination of facts, as follows:

| | |
|---|---|
| Acreage of wheat | 35 acres |
| Farm wheat acreage allotment | 27 acres |
| Excess acreage of wheat | 8 acres |
| Wheat normal yield per acre | 24 bushels |
| Farm marketing excess of wheat | 192 bushels |

The defendant took no further steps to have these determinations reviewed. The defendant admitted that he failed to store or deliver to the Secretary of Agriculture any part of his farm marketing excess in compliance with the statute and that he has failed to pay the penalty incurred on the farm mar-

**546**

keting excess of wheat determined for his farm. He stated in answer to one of the interrogatories that "a part of this 192 bushels of so-called excess was fed to chickens and cattle, a part is still in the bin."

The rate of penalty applicable under the law and regulations with regard to the 1954 wheat crop is $1.12 per bushel. The amount of the penalty on the defendant's farm marketing excess of wheat for the 1954 crop is $215.04. This sum, under the applicable regulations, became due sixty days after January 31, 1955.

In the Stangland case the material facts are shown to be as follows: Wheat was seeded for harvest in 1954 on the defendant's farm and the crop was harvested. The defendant was the producer of the wheat raised on the farm. The records of the Noble County, Indiana, Agriculture Stabilization and Conservation Committee in 1953 did not show the defendant's farm in Noble County, Indiana, as a wheat farm and it was not so listed on the 1954 listing sheets. On or about July 15, 1954, the defendant received a notice from the County Committee which showed that his wheat acreage allotment was 0 acres, that his normal yield per acre was 22 bushels and that his farm marketing excess was 2,992 bushels. On July 27, 1954, he applied for a review by the Review Committee of the determinations made with regard to his allotment and farm marketing quota. On September 9, 1954, he was notified that the Review Committee had determined a 14 acre allotment. The Review Committee also determined that the wheat seeded on the farm was 30 acres, or an excess over his allotment of 16 acres. Since the normal yield per acre was determined as 22 bushels, the farm marketing excess was fixed at 352 bushels. The defendant took no further steps to have these determinations reviewed. The wheat raised on the farm in 1954 was harvested and the defendant indicated that the excess over quota was used

for seed and feed. He admitted that he failed either to store or deliver to the Secretary of Agriculture any part of this excess in accordance with the provisions of the statute and that he has failed to pay the penalty involved. The rate of the penalty is $1.12 per bushel under the Act and the regulations and the amount of the penalty is $394.12. This sum, under the applicable regulations, became due sixty days after January 31, 1955.

 Aside from the specific defenses to which reference hereafter will be made, defendants contend that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is not applicable to these cases. Their contention is that Rule 81 of the Federal Rules of Civil Procedure excludes from the Rules' coverage cases involving a "forfeiture of property for violation of a statute of the United States", and that the instant cases are that type of action. Even assuming the premise of defendants' argument, namely, that these actions involve a forfeiture of property for violation of a statute of the United States, a careful reading of Rule 81 shows that the Rules of Civil Procedure are applicable to this type of action except to the extent that the practice in such proceedings is set forth in the statutes of the United States. No specific statutory practices covering the collection of penalties under the Agricultural Adjustment Act have been cited. Therefore, it would seem that even under defendants' contention the Rules of Civil Procedure apply. Actions for collection of marketing quota penalties are civil and not criminal actions. Usher v. United States, 4 Cir., 1944, 146 F.2d 369. The penalties incurred under the Agricultural Adjustment Act are debts which are due the government, and suits to collect the penalties are civil actions. United States v. Biehunko, D.C.S.D.Tex.1944, 55 F.Supp. 706. They are not, as defendants contend, proceedings for forfeiture of property for violation of a statute of the United States.

In their Second Defense defendants allege that they have never been "either directly or indirectly engaged in interstate commerce or foreign commerce in any manner." that would make them subject to the Agricultural Adjustment Act, and in that part of their Third Defense not struck the defendants allege that they have not rendered themselves "subject to the Agricultural Adjustment Act of 1938, as amended, or of the regulations thereunder and [are] not subject to said Act." Defendants' contentions that their activities are not an engagement in interstate commerce and that such activities have not subjected them to the provisions of the Agricultural Adjustment Act have been decided by Wickard v. Filburn, 1942, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122. In that case the Supreme Court held that a producer of such excess wheat is not excluded from the provisions of the Act by the fact that the excess wheat grown on a farm is never marketed or that it is consumed on the farm where grown. The answers to the Government's interrogatories show that the defendants produced a farm marketing excess of wheat on their respective farms during 1954. That was sufficient to subject them to the provisions of the Act and to make their activities an engagement in interstate commerce under the holding of Wickard v. Filburn.

The defendants in their Fourth Defense contend that the Act and the regulations issued thereunder are violative of the Constitution of the United States for various reasons. These contentions cannot be sustained. Mulford v. Smith, 1939, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092; Wickard v. Filburn, supra; Rodgers v. United States, 6 Cir., 1943, 138 F.2d 992; Usher v. United States, supra.

Finally, it is determined that the plaintiff is entitled under the provisions of the Act and the regulations issued thereunder to judgment in these cases as a matter of law.