**UNITED STATES of America, Plaintiff,**

v.

**Paul J. JOHNSON, Defendant.**

**Civ. A. No. 638.**

United States District Court
W. D. Arkansas,
Texarkana Division.

Oct. 23, 1957.

Charles W. Atkinson, U. S. Atty., Henry M. Britt, Asst. U. S. Atty., Ft. Smith, Ark., Dan P. Chisholm, Patrick C. Murphy, Attys., U. S. Dept. of Agriculture, Little Rock, Ark., for plaintiff.

Shaver, Tackett & Jones, Ben Shaver, Paul Jones, Texarkana, Ark., for defendant.

LEMLEY, Chief Judge.

This cause, which is an action for the recovery of a civil penalty under the Agricultural Adjustment Act of 1938, as supplemented and amended (7 U.S.C.A. § 1281 et seq., particularly Sections 1331–1340, which relate to wheat),[1] is before the Court upon the plaintiff's motion for judgment on the pleadings, which we treat as a motion for summary judgment, the defendant's response thereto, and his motion for summary judgment, which matters have been submitted upon written briefs.

The defendant is a farmer who resides in Little River County, Arkansas. During 1956 marketing and acreage controls were in effect with respect to wheat under the provisions of the statute that has been mentioned and the regulations issued pursuant thereto. In that year the defendant, without having a wheat acreage allotment, planted 50.5

---

1. Insofar as here applicable the statute imposes penalties upon producers who produce wheat in excess of their farm marketing quotas. The scheme of the Act and its operation as applied to wheat are thoroughly discussed in Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L. Ed. 122.

acres of his land to a mixed crop of wheat and Singletary peas; the mixed crop was harvested, and thereafter the wheat was separated from the peas and was fed to the defendant's hogs.

The Little River County Agricultural Stabilization and Conservation Committee, which was the local body administering the wheat program in that county, acting under the statute and the regulations, determined that the defendant had no wheat acreage allotment, that he had planted 50.5 acres of wheat, that the normal yield of that acreage was 5 bushels per acre, and that defendant had a "farm marketing excess" subject to penalty of 252 bushels. Defendant was notified of those determinations, of his right to petition for a downward revision of his farm marketing excess and of his right to an administrative review of his farm marketing excess or any other determination of the county committee made in connection therewith. The defendant, however, never sought any downward revision of his farm marketing excess, and never sought any administrative review of any of the committee's determinations, but simply harvested the crop and fed the wheat to his hogs.

The Government contends that during 1956 the defendant was a producer of wheat, that he produced wheat without having an acreage allotment therefor, that as a result of his operations he produced a farm marketing excess which was subject to the statutory penalty at the rate of 45% of the parity price of wheat, determined as of May 1, 1956, which amounted to $1.07 per bushel, or a total of $269.64, the amount sued for.[2]

█ The defendant admits that he had no wheat acreage allotment in .1956,

and that he planted a mixed crop of wheat and Singletary peas and fed the wheat to his hogs. And while he does not dispute the amount of penalty claimed, if any is due, he earnestly contends that his operations were not such as to subject him to any penalty. In that connection, although he concedes, as indeed he must in the light of the authorities, that a producer of wheat is not relieved from penalties to which he is otherwise liable merely because he does not intend to market and does not market his wheat but consumes it himself or feeds it to his livestock,[3] he argues that the crop planted by him was not "wheat" within the meaning of the statute and regulations, and that consequently he was not such a producer of wheat as to be subject to the statutory penalty. It is his position that the wheat which he planted along with the Singletary peas was what he calls "hog wheat," as contrasted to what he calls "flour wheat," that is to say that it was low grade wheat unfit for milling into flour and never intended to be so milled, and that it was not the intent of Congress to make the growing of such wheat subject to the restrictions or penalties of the Act.

The short answer to that contention is that it amounts to a collateral attack on the determinations of the county committee which have been mentioned, and as such is prohibited by the direct judicial review provisions of 7 U.S.C.A. §§ 1365–1367, which sections set up a judicial review procedure available to a dissatisfied producer after he has utilized the administrative review authorized by the statute. The remedy provided by those sections of the Act has been held to be exclusive, Miller v. United States, 6 Cir., 242 F.2d 392; Larkin v. Rose-

---

2. 7 U.S.C.A. § 1340(1) (2). See also Wheat Marketing Regulations for 1956, Sections 728.659, 728.676. Those regulations were published in the Federal Register on December 17, 1955, and the defendant was charged with constructive notice of their contents. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S. Ct. 1, 92 L.Ed. 10.

3. Wickard v. Filburn, 317 U.S. 111, 63 S.

Ct. 82, 87 L.Ed. 122; United States v. Morelock, D.C.Md., 124 F.Supp. 932, 943; United States v. Shafer, D.C.Md., 132 F. Supp. 659, affirmed, 4 Cir., 229 F.2d 124, certiorari denied 351 U.S. 931, 76 S.Ct. 788, 100 L.Ed. 1460; United States v. Stangland, D.C.Ind., 137 F.Supp. 539, affirmed 7 Cir., 242 F.2d 843; United States v. Bonderer, D.C.Mo., 139 F.Supp. 391.

berry, D.C.Ky., 54 F.Supp. 373; Lee v. Roseberry, D.C.Ky., 94 F.Supp. 324; United States v. Stangland, D.C.Ind., 137 F.Supp. 539, affirmed 7 Cir., 242 F.2d 843; United States v. Bonderer, D.C. Mo., 139 F.Supp. 391; and in the case last cited the Court said:

"A review by a review committee of the farm marketing quota, as defined in 7 U.S.C.A., § 1340, would also provide a review of all of the pertinent facts determined by the County Committee. Not having sought a review of the allotment, or of the farm marketing excess of wheat, the defendant has clearly failed to exhaust the administrative remedies provided in the Act and Regulations, and he is, therefore, barred from now making any contention that the action of the County Committee was improper. The court is entirely without legal power to grant any relief to the defendant or others similarly situated." 139 F.Supp. 396.

■ The determinations of the county committee with regard to the defendant's 1956 crop necessarily involved the determinations that what he planted was "wheat" and that he was a "producer of wheat." Had the defendant chosen to do so, he could have urged before the review committee the same contentions that he advances here, and had he obtained no relief from that committee, he could have gone directly into either a state or federal court and have obtained a judicial review of the administrative action. He did not seek any administrative review, however, and his failure to do so precludes him from now questioning in the instant case the correctness of the determinations of the county committee.

While the conclusion just stated actually disposes of the case, we prefer not to base our decision upon that ground alone

since we are satisfied that the contention of the defendant is invalid on its merits. As has been indicated, it is now well settled that wheat produced on excess acreage is subject to the statutory penalty even though it is never marketed, but is consumed on the farm by feeding to livestock or otherwise; the reason for this rule is that such wheat overhangs the market and tends to act as a price depressant, and, further, that such wheat supplies a need which would otherwise be supplied by purchases on the market and thus competes with wheat in commerce. Wickard v. Filburn, supra, 317 U.S. 111, 128, 63 S.Ct. 82, 91, 87 L.Ed. 122. Although the defendant recognizes the force of the Filburn case and other cases following it, which have already been cited, he seeks to escape that force by urging that in those cases the courts were concerned with "flour wheat" suitable for milling, and that what he calls "hog wheat," not being suitable for milling or marketing does not and cannot affect interstate commerce. It will thus be seen that the heart of his argument lies in his attempted distinction between "flour wheat" and "hog wheat."

■ Granting that the defendant's argument is ingenious and not without some equitable appeal, at least in this particular instance, the trouble with it is that the distinction which he seeks to draw and upon which he relies finds no basis in either the statute or the regulations, nor is it recognized in the cases.[4] Neither the statute nor the regulations distinguish, at least as far as penalty is concerned, between different kinds of wheat based on differences in grade, quality, or suitability for milling. It seems to us that under the Act and regulations "wheat is wheat," and that the grain which the defendant planted along with the Singletary peas was "wheat" he himself concedes.

It is quite true that Section 728.651(s) of the regulations permits Arkansas

4. While in Wickard v. Filburn, supra, the Court in the course of its opinion did refer to wheat "in marketable condition," the Court did not define that term, and its mere use in the course of the opinion is not, in our estimation, a sufficient basis for making the distinction which the defendant attempts to draw.

farmers, and those in many other localities, to plant certain mixtures of wheat and other small grains without having to obtain acreage allotments and without being liable for penalties; but unfortunately for the defendant the regulations specifically provide that a mixture of wheat and Singletary peas is not one of the mixtures the unregulated planting of which is permitted.[5] The reason for the rule seems to be, as the Government suggests in its reply brief, that because of the inherent differences in wheat and Singletary peas, they can be separated after harvest, as the defendant did in this case, thus making enforcement of the Act impossible, or at least more difficult and uncertain.

In addition to his contention that he was not a producer of wheat in 1956, the defendant's answer alleges that he did not during that year apply for or receive any payments from the Government under the wheat program, and he further states in his affidavit in support of his motion for summary judgment that in 1955 he planted fifteen acres of mixed wheat and Singletary peas without objection from the county committee. While those matters have not been argued in his brief, we do desire to comment briefly upon them.

As to the allegation that he did not apply for or receive any payments or benefits from the Government in 1956, it is sufficient to say that the defendant's liability for penalties does not depend upon his participating in the wheat program or upon his having received any Government payments or benefits; the regulatory and penalty provisions of the Act apply to all producers whether they participate in or cooperate with the program or not, and regardless of whether or not they receive benefits. United States v. Locke, D.C.Tenn., 56 F.Supp. 999; United States v. Shafer, supra, D.C.Md., 132 F.Supp. 659; and United States v. Stangland, supra, D.C.Ind., 137

F.Supp. 539. As to the fact that the defendant planted fifteen acres of mixed wheat and Singletary peas in 1955, it is to be pointed out that the Act specifically exempts from its terms acreages of wheat not in excess of fifteen acres. 7 U.S.C.A. § 1340(7).

The defendant may well think it unfair and an unreasonable restraint upon his liberty to be subjected to a penalty for planting on his own land a mixture of wheat and Singletary peas and then feeding the wheat to his own hogs. But it is unfortunately true in this country, as elsewhere, that losses of liberty in greater or lesser degrees frequently, if not invariably, march hand in hand with Government subsidies in any field, whether it be industry, commerce, agriculture, or education; and, as the defendant will learn as a result of this litigation, such losses are not confined to those who personally benefit from the programs involved.

Let a judgment in favor of the plaintiff be entered.

---

5. In the regulations Singletary peas are referred to as "rough peas." The defendant concedes, however, that Singletary peas and "rough peas" are the same legume. The 1948 Yearbook of the Department of Agriculture, pp. 708 and 848, gives the scientific name of this plant as *Lathyrus hirsutus*.