James WEIR, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17058.

United States Court of Appeals
Eighth Circuit.

Nov. 27, 1962.

James P. Donovan, Dallas, Tex., William F. Billings, Dallas, Tex., on the brief, for appellant.

James W. Gallman, Asst. U. S. Atty., Little Rock, Ark., Robert D. Smith, Jr., U. S. Atty., Little Rock, Ark., on the brief, for appellee.

Before VOGEL and VAN OOSTERHOUT, Circuit Judges, and VAN PELT, District Judge.

VAN OOSTERHOUT, Circuit Judge.

This action was brought by the United States against appellant James Weir to recover the penalty imposed by the Agricultural Adjustment Act of 1938, as amended, 7 U.S.C.A. §§ 1281–1407. The United States sought to recover $16,776.80 farm marketing excess penalty, plus interest thereon, imposed by 7 U.S.C.A. § 1356, for appellant's having raised more rice in the year 1959 than the farm marketing quota assigned to him allowed.

The appellant moved to dismiss the action for failure to state a claim, which motion was denied. He then answered and asserted a counterclaim wherein he sought to recover the penalty he had paid in 1958 and charged that the Agricultural Adjustment Act and the applications thereof are unconstitutional. He asked that a three-judge district court be convened to enjoin the enforcement of the Act. This request was denied.

The United States moved for summary judgment which was granted. Final judgment was delayed by a complicated series of events involving an attempt by appellant to procure the deposition of the Secretary of Agriculture.

Eventually judgment was entered for the plaintiff for $16,972.09 on February 12, 1962. This appeal challenges the trial court's action in: (I) denying appellant's application for a three-judge court; (II) denying appellant's motion to dismiss; (III) refusing to dismiss the complaint for failure of the Secretary of Agriculture to appear for his deposition; and (IV) granting plaintiff's motion for summary judgment. We shall consider these issues in the order stated.

**I.**

Appellant's first contention is that the trial court was without jurisdiction to deny appellant's application for a three-judge court and to hold the Agricultural Adjustment Act of 1938 constitutional. This challenge of the trial court's jurisdiction is based on an argument that the trial court must upon application initiate the procedure of convening a three-judge court. Appellant quotes from 28 U.S.C.A. § 2284(1) in support of his claim that the trial judge has no discretion to deny the application:

"On the filing of the application, he [the district judge] *shall immediately* notify the chief judge of the circuit, who shall designate two other judges, at least one of whom shall be a circuit judge. Such judges shall serve as members of the court to hear and determine the action or proceeding." (Emphasis added.)

The answer to appellant's claim is contained in the statute itself. 28 U.S.C.A. § 2284 outlines the procedure to be used "in any action or proceeding required by Act of Congress to be heard and determined by a district court of three judges * * *." Section 2284, then, is not jurisdictional. The trial court's jurisdiction is limited, if at all, only by 28 U.S.C.A. § 2282:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

This provision does not divest the court of jurisdiction simply because application is made for a three-judge court to be convened; it merely says that certain *injunctions* shall not be issued unless a three-judge court has determined the matter. The manifest purpose is to

avoid injudicious invalidation of federal statutes.

The trial court in a letter memorandum states:

"Defendant's application for the convening of a three judge court will be denied. When such an application is made, it is the duty of the single judge to whom the request is addressed to determine in the first instance whether the case is one which calls for three judge court. If the relief sought by the applicant does not fall within the purview of the statute providing for three judge courts, or if the constitutional question sought to be raised is plainly insubstantial there is no occasion for convening a statutory court, and the application therefor should be denied by the judge to whom it is addressed. Ex Parte Poresky, 290 U.S. 30 [54 S.Ct. 3, 78 L.Ed. 152]; Bell v. Waterfront Commission, 2 Cir., 279 F.2d 853; White v. Gates, C.A.D.C. [102 U.S.App.D.C. 346], 253 F.2d 863, cert. den., 365 [356] U.S. 973 [78 S.Ct. 1136, 2 L.Ed.2d 1147]; Sealy v. Department of Public Instruction, 3 Cir., 252 F.2d 898, cert. den., 356 U.S. 975 [78 S.Ct. 1139, 2 L.Ed.2d 1149]; Wicks v. Southern Pacific Co., 9 Cir., 231 F.2d 130, cert. den., 351 U.S. 946, 76 S.Ct. 845, 100 L.Ed. 1471; Haines v. Castle, 7 Cir., 226 F.2d 591, cert. den., 350 U.S. 1014 [76 S.Ct. 660, 100 L.Ed. 874]; Kelley v. Board of Education, D.C.Tenn., 139 F.Supp. 578."

The view of the trial court that a three-judge court is not required if the constitutional issue sought to be raised is plainly unsubstantial is supported by the authorities it cites. The Supreme Court at its last term in Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794, thus states the test:

"When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute."

We followed and applied such test in Borden Co. v. Liddy, 8 Cir., 309 F.2d 871 (1962). Upon the basis of a determination that the constitutional issue there raised was substantial, we found the court committed error in failing to convene a three-judge court.

The trial court's finding as to substantiality of the constitutional question is reviewable. Idlewild Bon Voyage Liquor Corp. v. Epstein, supra; Bell v. Waterfront Commission, 2 Cir., 279 F.2d 853, 858. In California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323, the court states:

"The lack of substantiality in a federal question may appear either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this Court as to foreclose the subject."

██ We are in full agreement with the trial court's conclusion that the constitutionality of the Agricultural Adjustment Act, including its marketing quota provisions, has been upheld by previous decisions of the Supreme Court and that an attack upon the constitutionality of the Act no longer presents a substantial question. The Act has been held constitutional in Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122; Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092; United States v. Haley, 358 U.S. 644, 79 S.Ct. 537, 3 L.Ed.2d 567, United States v. Haley, 82 S.Ct. 11.[1]

Wickard and Haley involve wheat quotas. Mulford relates to a tobacco quota.

---

1. Haley, a wheat farmer objecting to wheat quotas, is represented by the counsel appearing for the present appellant. Apparently the constitutional attack made in Haley is much the same as the general attack here made.

While no cases have been cited or found treating with rice quotas, appellant points to no rational basis for distinguishing between the wheat, tobacco and rice provisions of the Act. Our examination of the legislation relating to the various crops shows the general statutory pattern of such legislation to be similar.

Appellant's attack upon the constitutionality of the Act is vague and general. Appellant concedes Wickard v. Filburn to be the foundation decision on constitutionality of the Act. His contention that Wickard is contrary to all established principles and that it should be "stricken from the books" seeks a remedy which it is beyond our power to grant.

The trial court was entirely justified in determining that the appellant had raised no substantial constitutionality issue. Hence, the court committed no error in denying the application for a three-judge court and acted within its jurisdiction in rejecting appellant's contention that the Act is unconstitutional.

## II.

Appellant's second contention is that the trial court erred in denying his motion to dismiss the complaint. He argues that the statute imposes no personal liability upon him to pay the penalty and that the penalty against a rice producer is recoverable only by enforcement of a lien upon the rice or by collection from a buyer of the rice.

Appellant cites United States v. Stevenson, 215 U.S. 190, 30 S.Ct. 35, 54 L.Ed. 153, and Globe Newspaper Co. v. Walker, 210 U.S. 356, 28 S.Ct. 726, 52 L.Ed. 1096, in support of his contention that provision for specific remedies for violation of a statute precludes all other remedies. The cases cited are clearly distinguishable and are of no aid to the appellant. In Stevenson the statute made certain immigration offenses a misdemeanor and imposed a $1000 penalty. The court, after considering the statute as a whole, rejected appellant's contention that he could not be indicted for the offense. The court, among other things, states:

"The rule which excludes other remedies where a statute creates a right and provides a special remedy for its enforcement rests upon the presumed prohibition of all other remedies. If such prohibition is intended to reach the Government in the use of known rights and remedies, the language must be clear and specific to that effect." 215 U.S. 190, 197, 30 S.Ct. 35, 36.

No cases involving the Agricultural Adjustment Act are cited. In numerous cases the Government has been given a judgment against the producer for the penalty. See United States v. Whittle, 4 Cir., 287 F.2d 638, 640; United States v. Stangland, 7 Cir., 270 F.2d 893, 894; Miller v. United States, 6 Cir., 242 F.2d 392, 394; United States v. Stangland, 7 Cir., 242 F.2d 843, 846. It is quite true that the foregoing cases do not squarely deal with appellant's present contention that the lien provision affords an exclusive remedy.

When the statutes pertaining to the penalty here involved are considered as a whole, we believe that it is entirely clear that Congress intended to impose personal liability for the penalty upon the producer.

Section 1356(a) reads:

"Whenever farm marketing quotas are in effect with respect to any crop of rice, the producer shall be subject to a penalty on the farm marketing excess at a rate [described] * *."

Appellant quibbles over the words "shall be subject to", claiming that they do not show any intent to create affirmative rights to recover directly from the producer. His argument is weak, and other sections of the statute show that it is wholly without merit.

Section 1356(c) provides:

"The person liable for payment or collection of the penalty shall be liable also for interest thereon * *."

This section is talking about persons who are *liable*—personally. Section 1372 (a) (buyer of produce to collect penalty)

explains the reference here to persons liable for collection, but what about the reference to "person[s] liable for *payment* * * * of the penalty"? This reference cannot be explained in terms of the lien on produce.

Section 1356(e) outlines methods by which the penalty can be postponed or avoided. Otherwise, "the penalty * * shall become due and payable". The section quite clearly applies to the producer himself. Section 1356(f) prevents producers from avoiding the penalty by storing their grain and later depleting the storage supply. That section states that "the penalty * * * shall be paid by the producer * * *." Section 1356(h) provides for termination of marketing quotas in certain cases, but it also provides:

"Such termination shall not abate any penalty previously incurred by a producer or relieve any buyer of the duty to remit penalties previously collected by him."

Section 1376 states:

"The several district courts of the United States are vested with jurisdiction specifically to enforce the provisions of this chapter [§§ 1281–1407]. If and when the Secretary shall so request, it shall be the duty of the several United States attorneys in their respective districts * * * to institute proceedings to collect the penalties provided in this chapter. * * *"

It is quite true that § 1356(d) provides that all rice raised by the producer shall be subject to a lien for the penalty, and § 1372 provides that the penalty with respect to marketing it shall be collected by the buyer and paid to the Secretary. Such provisions are in no way inconsistent with the producer's liability for the penalty.

■ Administrative regulations of the body having charge of a program established by statute, at least to the extent that they are not inconsistent with the statutes, have long been considered as persuasive. Regulation 7 C.F.R. § 730.-

975(a) specifically states that each producer having an interest in the rice produced shall be liable to pay the amount of penalty on the farm marketing excess.

The court committed no error in its determination that the Act imposes personal liability upon the producer for penalties incurred.

### III.

■ Appellant, on January 24, 1962, filed a motion to dismiss for failure of the Secretary of Agriculture to appear at Little Rock, Arkansas, to give his deposition. Such motion was overruled. In response to the Government's motion for a protective order, pursuant to Rule 30 (b), the trial court, while not passing on the court's authority to order a cabinet officer to appear in Little Rock, entered an order to the effect that the Secretary would not be required to appear at Little Rock.

Defendant concedes that the disposition of the motion to dismiss rested in the sound discretion of the trial court, but asserts that an abuse of discretion here exists. No authorities supporting his position are cited. The memorandum opinions of the trial court clearly negative any abuse of discretion. No compelling reason is shown why the Secretary should be required to leave the seat of his duties as a cabinet officer to give this deposition. Serious doubt exists whether the Secretary had any personal knowledge of the steps taken to set up the rice program for 1959, a time prior to his taking office. Appellant, as suggested by the trial court, could have readily obtained any information that he desired by deposition in Washington or by taking deposition by written interrogatories.

Although this action was commenced on October 28, 1960, the motion for summary judgment was filed on July 14, 1961, and plaintiff had in the summer of 1961 expressed a desire to take the Secretary's deposition, no steps were taken to obtain the deposition prior to the court's memorandum opinion of December 29, 1961, expressing the view that the summary judgment should be granted. Even then

the court held the matter open for 30 days for the purpose of affording appellant an opportunity to take the Secretary's deposition but the appellant did not conform to the reasonable conditions imposed by the court relating to the taking of the deposition. The court did not abuse its discretion in refusing to dismiss the complaint upon the basis of the Secretary's failure to appear in Little Rock to give his deposition.

### IV.

 Lastly, appellant contends that the court erred in granting plaintiff's motion for summary judgment. Appellant's contention is that disputed material fact issues exist on whether the Secretary complied with the statutory conditions precedent to establishing the rice quotas here involved. Plaintiff in its complaint, as it was authorized to do by Rule 9(c), alleges compliance with the statutory conditions precedent set forth in specified statutes. Appellant in his pleadings asserts that he specifically denies that plaintiff has complied with the conditions set forth in the statutes described in plaintiff's complaint and others, setting out such statutes by section number. Appellant's pleading makes no attempt to set out any specific basis for his contention that the Secretary has not complied with the conditions.

Plaintiff filed an affidavit of the county office manager to the effect that all procedural steps were taken by the County ASC Committee in determining appellant's acreage quota and marketing excess, and that appropriate and timely notices of the acreage allotment, on form MQ–24, and of the marketing excess, on form MQ–93, were mailed to the appellant. Defendant filed an affidavit on February 5, 1962, after the court's order of December 29, 1961, conditionally granting the Government's motion for summary judgment. The court found such affidavit was not

timely and not filed with leave of court, but nevertheless the court gave it full consideration. Such affidavit deals principally with the hardship imposed upon appellant by the low acreage allotment assigned him, and asserts that all relevant county committee action was arbitrary and contrary to the law and regulations. The only claim of irregularity at the national level is "the Department of Agriculture has no statistics (facts) on quantites of rice used for seed." With respect to the defects charged at the local level, we adopt the trial court's decision, reading:

> "Defendant's claims that he did not in fact plant 146 acres of rice in 1959, as determined by the County Committee, and that the Committee acted arbitrarily, capriciously, and inequitably in fixing his allotment at 10 acres, clearly are matters to be decided initially at the administrative level, and defendant's failure to exhaust his administrative remedies precludes him from advancing those contentions here. Miller v. United States, supra; United States v. Johnson [D.C., 155 F.Supp. 898] supra; United States v. Lillard, W.D. Mo., 143 F.Supp. 113; United States v. Bonderer, W.D.Mo., 139 F.Supp. 391."

Some claim is made by the appellant in his brief that he did not receive notice of excess planting on form CSS–590. Such issue was not raised below. Appellant's own affidavit clearly reflects that he was completely informed on the County Committee's action as to the quota assigned to him and as to the excess marketing determination. Moreover, the mailing of notices on forms MQ–24 and MQ–93 is not disputed.[2]

 The only violation of condition precedent at the national level specifically charged is that 7 U.S.C.A. § 1301(c) re-

---

2. Plaintiff has filed an addenda to the record, an abstract of administrative proceedings of the County Committee. Since this was not part of the record in the trial court, we cannot consider it here. While we place no reliance upon the addenda, we observe that such record clearly shows notice on CSS–590 was mailed to appellant, and appellant's own report shows that the acreage planted by the appellant corresponds with that found by the committee.

quires "the latest available statistics of the Federal Government shall be used by the Secretary in making the determinations required * * *." The affidavit allegation is that the Government had no statistics as to rice seed. It would seem that if the Government had no statistics as to the seed, there would be no violation of the requirement for the use of the latest available Government statistics. In any event, there is nothing to show that the Secretary did not give consideration to seed requirements to the extent that they are relevant. The proclamation as to the rice marketing quota for 1959 (7 C.F.R. §§ 730.1002 et seq.) would seem to indicate that statutory standards were observed. The trial court was entirely justified, in the absence of showing of the existence of proof to the contrary, in applying the presumption that Government officials acted regularly and properly and have complied with all requirements and met all conditions precedent. S. R. A., Inc. v. Minnesota, 327 U.S. 558, 563, 66 S.Ct. 749, 90 L.Ed. 851; Wells and Wells, Inc. v. United States, 8 Cir., 269 F.2d 412, 415; Benson v. Schofield, 98 U.S.App.D.C. 424, 236 F.2d 719, 722.

■■ Both the opposing and moving parties are entitled to any presumption that is applicable to the facts before the court. 6 Moore's Federal Practice ¶ 56.-15[3], p. 2129. While appellant has denied in his pleadings that the Secretary has complied with the condition precedent, he has pointed to no substantial evidence to support such pleaded conclusion. The burden is upon the movant to establish that no genuine issue exists as to any material fact. 6 Moore's Federal Practice ¶ 56.15[3] states:

> "To defeat a movant who has otherwise sustained his burden within the principles enunciated above, the party opposing the motion must present facts in proper form—conclusions of law will not suffice; and the opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, nor merely suspicions."

■ The trial court correctly determined that no genuine issue exists as to any material fact.

An independent basis mentioned by the trial court compels an affirmance. 7 U.S.C.A. §§ 1361–68 contain administrative provisions for review of farm marketing quotas, including those pertaining to rice. Section 1363 provides for a review committee and gives a dissatisfied farmer a right to have his marketing quota reviewed. Said section also provides that if application for review is not made, "the original determination of the farm marketing quota shall be final." Regulations 711.2 to .30 issued pursuant to 7 U.S.C.A. § 1375 provides for the organization and operation of the review board. Section 711.13 provides that a review shall be from notice of quota on form MQ–24, or from notice on farm marketing excess on form MQ–93. The review shall include the following factors:

"(1) Farm acreage allotment.

"(2) Acreage of the commodity on the farm.

"(3) Normal yield for the farm.

"(4) Actual production for the farm.

"(5) Farm marketing excess.

"(6) Determination by the county committee of the land constituting the farm."

It appears without dispute that notices on form MQ–24 and MQ–93 were properly mailed; that the appellant made no application for review to the review board or to the secretary, or to any of his subordinates.

■ It is apparent that the Act and the regulations promulgated thereunder provide for an adequate administrative remedy for the adjudication of the acreage quota and the marketing excess. We believe it to be clear that the Act contemplates that the remedies created therein be exclusive. The review proceeding under § 1363 has been previously discussed. Sections 1365 and 66 provide for court review of determinations by the review committee, limiting the review to ques-

tions of law. Section 1367 provides in part:

"Notwithstanding any other provision of law, the jurisdiction conferred by said sections to review the legal validity of a determination made by a review committee pursuant to said sections shall be exclusive. No court of the United States or of any State shall have jurisdiction to pass upon the legal validity of any such determination except in a proceeding under said sections."

While § 1367 standing in isolation could possibly be interpreted as limiting independent judicial review only in situations while an appeal is taken from a review board, such interpretation would be completely inconsistent with the statutory pattern set up in §§ 1361–68, and would ignore the specific provision of § 1363 that absent an application for review the determination of the marketing quota shall be final.

There is a conflict of authority as to whether a party can raise the question of the Act's constitutionality in the district court in situations where he did not resort to the administrative procedure. Compare Miller v. United States, 6 Cir., 242 F.2d 392, with United States v. Kissinger, 3 Cir., 250 F.2d 940.

We deem it unnecessary to attempt to resolve the controversy as it relates to constitutional issues, for like the trial court, we have elected to consider the constitutional issue and have found it to be without merit.

▅▅▅ Apart from the constitutional issue, courts of appeals considering the question have almost without exception [3] held that as to issues entrusted by the Act and Regulations to the local ASC Committee for determination, a court will not upset the committee's action when the complaining party has failed to resort to the review relief provided by § 1363 or the

appeal from the review board to the court, authorized by §§ 1356–66. United States v. Jeffcoat, 4 Cir., 272 F.2d 266; Donaldson v. United States, 6 Cir., 264 F.2d 804; Donaldson v. United States, 6 Cir., 258 F.2d 591; Miller v. United States, 6 Cir., 242 F.2d 392; Corbin v. United States, 6 Cir., 279 F.2d 431; United States v. Stangland, 7 Cir., 242 F.2d 843; Rigby v. Rasmussen, 10 Cir., 275 F.2d 861; Corpstein v. United States, 10 Cir., 262 F.2d 200.

The reasoning of the cases just cited varies somewhat but the result reached in all of them is the same.

The court has not had occasion to pass squarely on the issue here discussed. We have had occasion to determine that review boards have the power to decide a variety of issues. Bishop v. Review Committee, 8 Cir., 298 F.2d 386; Review Committee v. Willey, 8 Cir., 275 F.2d 264. A number of the district courts in this circuit have denied relief to one failing to pursue the remedies afforded by the act. United States v. Johnson, W.D.Ark., 155 F.Supp. 898; United States v. Lillard, W.D.Mo., 143 F.Supp. 113; United States v. Bonderer, W.D.Mo., 139 F.Supp. 391.

▅▅▅ We believe that the statutes and the regulations place the initial responsibility for determining quotas and marketing excess with the County ASC Committees. The statutes and regulations previously discussed set out the exclusive means for attacking the decisions of the county committees upon such issues. If no appeal is taken from the county committee to the review board, such committee's decision is final. § 1363. A dissatisfied farmer who has not exhausted the review board remedy cannot reach the courts. Such is the situation here.

Appellant's failure to exhaust the remedies available to him affords an additional sound basis in support of the summary judgment.

---

3. The only case indicating the contrary we have found is Fulford v. Forman, 5 Cir., 245 F.2d 145. In a subsequent case, Hawkins v. State Agriculture Stabilization & Conservation Committee, 5 Cir., 252 F.2d 570, the Fifth Circuit states: "We are not in agreement as to whether Congress has precluded a judicial review of acreage apportionment among counties. Cf. 7 U.S.C.A. §§ 1363–1367."

The result here seems somewhat harsh. Possibly if appellant had pursued the administrative remedies available to him, he might have obtained some relief. In any event, we have no right to determine the wisdom of legislation that is found to be constitutional. The legislative body is the proper source for any needed relief.

The judgment appealed from is affirmed.