UNITED STATES of America, Plaintiff,

v.

Lloyd CADY and McCabe Company, Defendants.

Civ. No. 2087.

United States District Court
D. Montana,
Havre-Glasgow Division.

June 6, 1960.

Gordon E. Hoven, Havre, Mont., for defendant Lloyd Cady.

Armin M. Johnson, Faegre & Benson, Minneapolis, Minn., for defendant Mc-Cabe Co.

JAMESON, District Judge.

This action arises under the Agricultural Adjustment Act of 1938, as amended, 7 U.S.C.A. § 1281 et seq.[1] Plaintiff seeks recovery of the statutory penalty on wheat grown by the defendant Cady during the year 1958 on acreage in excess of his allotment.[2] The facts are undisputed, and both parties have moved for summary judgment.

Cady grew wheat on 41.6 excess acres, and the farm marketing excess was 624 bushels, resulting in a statutory penalty of $622.39. Notice of Farm Marketing Quota and Farm Marketing Excess of Wheat (Form MQ 93) was mailed to Cady on August 20, 1958, advising Cady of his right to apply for a downward adjustment or review, and also that prior to November 15, 1958,[3] he should either (1) remit the penalty; or (2) store the excess wheat, secured by funds in escrow, warehouse receipt, or bond of indemnity[4]; or (3) deliver the excess wheat to the Secretary of Agriculture.

Krest Cyr, U. S. Atty., Jack H. Bookey, Asst. U. S. Atty., Butte, Mont., for plaintiff.

1. "The general scheme of the Agricultural Adjustment Act of 1938 as related to wheat is to control the volume moving in interstate and foreign commerce in order to avoid surpluses and shortages and the consequent abnormally low or high wheat prices and obstructions to commerce." Wickard v. Filburn, 1942, 317 U.S. 111, 63 S.Ct. 82, 84, 87 L.Ed. 122.

2. § 1340 of Title 7, U.S.C.A. provides in pertinent part: "Notwithstanding the other provisions of this chapter—

\* \* \* \* \*

"(2) During any marketing year for which quotas are in effect, the producer shall be subject to a penalty on the farm marketing excess of wheat. \* \* \*

"(3) The farm marketing excess for wheat shall be regarded as available for marketing, and the penalty and the storage amount or amounts to be delivered to the Secretary of the commodity shall be computed upon the normal production of the excess acreage. \* \* \* The Secre-

tary shall issue regulations under which the farm marketing excess of the commodity for the farm may be stored or delivered to him. Upon failure to store or deliver to the Secretary the farm marketing excess within such time as may be determined under regulations prescribed by the Secretary, the penalty computed as aforesaid shall be paid by the producer. \* \* \*

"(4) Until the producers on any farm store, delivered to the Secretary, or pay the penalty on, the farm marketing excess of any crop of wheat, the entire crop of wheat produced on the farm shall be subject to a lien in favor of the United States for the amount of the penalty.

"(5) The penalty upon wheat stored shall be paid by the producer at the time, and to the extent, of any depletion in the amount of the commodity so stored, except depletion resulting from some cause beyond the control of the producer."

3. See 7 C.F.R. § 728.874(b).

4. See 7 C.F.R. § 728.879(c), (d) and (e).

Cady sold 514 bushels of wheat to the defendant McCabe Company [5] and on August 25, 1958, stored approximately 700 bushels in a granary on his farm. Shortly thereafter the wheat so stored was totally destroyed by fire. No security had been furnished when the wheat was destroyed. On or about September 8, 1958, Cady notified a representative of the County A.A.A. Office that approximately 700 bushels of wheat had been destroyed by fire.

On November 14, 1958, Cady applied for an adjustment in his farm marketing excess by reason of the destruction of the wheat by fire. The county committee held that since the loss occurred "prior to bonding or prior to deposit of funds in escrow" it could not be recognized as a basis for a downward adjustment.

It is conceded that Cady had the right to store his wheat on his farm and postpone the payment of the penalty, provided that prior to November 15, 1958 he furnished security for the penalty through depositing funds in escrow or furnishing either warehouse receipt or bond of indemnity.

7 U.S.C.A. § 1340(5) provides that the "penalty upon wheat stored shall be paid by the producer at the time, and to the extent, of any depletion * * * except depletion resulting from some cause beyond the control of this producer." The regulation implementing this statutory provision reads in part: "The penalty on the amount of excess wheat stored shall be paid by the producers on the farm at the time and to the extent of any depletion in the amount of wheat stored except * * * to the extent of * * * the amount of any wheat destroyed by fire * * * provided the producer shows beyond a reasonable doubt that the depletion resulted from such cause and not from his negligence nor from any affirmative act done or caused to be done by him * * *." 7 C.F.R. § 728.879(g) (3). It is not contended that the wheat was destroyed

by the negligence or any affirmative act of the defendants. It is clear that if security had been furnished prior to the fire, defendants would not be liable for the penalty. Does the fact that the wheat was destroyed by fire prior to Cady furnishing security, but within the time within which he could legally do so, relieve him of liability?

Plaintiff contends that the penalty became due when the wheat was harvested, relying upon the regulation found at 7 C.F.R. 728.874(b), which reads in part: "Time When Penalties Become Due. The farm marketing excess for any farm shall be regarded as available for marketing and the penalty thereon shall become due at the time any wheat produced on the farm is harvested." The regulation further provides that the penalty on that amount of excess which is stored pursuant to the applicable regulations "shall not be remitted until the time, and to the extent, of any depletion in the amount of wheat so stored not authorized as provided in § 728.879(g)."

The first sentence of § 728.874(b) in itself lends support to plaintiff's contention. When it is construed with the applicable statute and other regulations, however, it does not appear that the situation here presented was contemplated by either the statute or regulations. In particular, 7 U.S.C.A. § 1340(3) specifically provides that, "Upon failure to store or deliver to the Secretary the farm marketing excess within such time as may be determined by the regulations prescribed by the Secretary, the penalty considered as aforesaid shall be paid by the producer."

Under this statutory provision the penalty is to be paid "upon failure to store * * * within such time as may be determined by the regulation * * *," i. e., in the instant case by November 15, 1958. Cady could not have been compelled to pay any penalty before that date. Prior to licensed storage and prior to the time when Cady would have been required to pay any penalty, the wheat

---

5. Plaintiff had a lien on this wheat pursuant to 7 U.S.C.A. § 1340(4), quoted in Note 2.

was destroyed by fire. The wheat was not in fact "available for marketing" when the penalty would have become payable.

It is suggested that even after the destruction of the wheat, Cady could have furnished the security required for storage at any time prior to November 15, 1958, in which event presumably he would be in compliance with the statute and regulation and could have avoided the payment of any penalty. But subsequent to the destruction of the wheat, the commodity for which the security would be given was non-existent. The law does not require a useless act.

Neither party has cited any case precisely in point, but plaintiff argues that United States v. Stangland, 7 Cir., 1957, 242 F.2d 843, presents an analogous situation. It was there held, in line with Wickard v. Filburn, supra note 1, that wheat consumed on the farm affects interstate commerce and that excess wheat may neither be disposed of nor used except upon payment of the penalty.[6] Here, however, there was no sale or other disposition or use of the wheat.

The wheat, having been destroyed by fire, was not available for either marketing or use. And such destruction occurred within the time licensed storage could have been effected and before any penalty was payable. Through a cause beyond his control Cady was unable to effect either a licensed storage or delivery of the wheat. It is my conclusion that under these circumstances no penalty is due.

Plaintiff does not contend that defendants failed to comply with any administrative remedy.

Plaintiff's motion for summary judgment is denied, and defendant Cady's motion for summary judgment is granted. Pursuant to Rule 11 of the local rules of court defendant will prepare, serve and file draft of judgment.

6. The rule was summarized in Wickard v. Filburn, as follows: " * * * Hence, marketing quotas not only embrace all that may be sold without penalty but also what may be consumed on the premises. Wheat produced on excess acreage

is designated as 'available for marketing' as so defined, and the penalty is imposed thereon. Penalties do not depend upon whether any part of the wheat either within or without the quota is sold or intended to be sold. The sum of this

is that the Federal Government fixes a quota including all that the farmer may harvest for sale or for his own farm needs, and declares that wheat produced on excess acreage may neither be disposed of nor used except upon payment of the penalty or except it is stored as required by the Act or delivered to the Secretary of Agriculture." 317 U.S. 111, 119, 63 S.Ct. 82, 84, 87 L.Ed. 122.