**UNITED STATES of America,**
**Plaintiff,**

v.

**Ailcie WHITTLE and William B.**
**Hairston, Defendants.**

Civ. A. No. 433.

United States District Court
W. D. Virginia,
at Danville.

April 18, 1960.

Judgment Affirmed March 27, 1961.
See 287 F.2d 638.

John Strickler, U. S. Atty., Roanoke, Va., for plaintiff.

Broaddus, Epperly & Broaddus, Martinsville, Va., for defendant.

DALTON, Chief Judge.

This suit seeks to enforce joint and several liability against defendants by reason of a violation in 1956 and 1957 of administrative regulations applicable to the growing and marketing of Flue-cured tobacco.

### Facts.

The stipulation of facts filed discloses that Mrs. Ailcie G. Whittle of Martinsville, Henry County, Virginia, is the owner of a farm located in Pittsylvania County, Virginia, some 24 miles from her home, which farm was inherited from her mother; that the farm for many years during her mother's lifetime, and continuing with Mrs. Whittle's ownership, was rented to one William B. Hairston, and that the tenant paid to the owner ¼ of the crops raised on the farm as rent; that for 1956 and 1957

tenant Hairston overplanted his tobacco quota each year by 1.76 acres, which overplanting calculated at the penalty rate on the number of pounds of tobacco over the allotment makes the sum of $1,152.10 claimed by the Government for 1956, and the sum of $876.09 claimed for 1957, or a total claim of $2,028.19, plus interest from the due dates; that the penalty was inadvertently not collected by the warehouseman (which of course would not affect the Government's right to subsequently collect the same); that Mrs. Whittle was without knowledge of any overplanting by Hairston in 1956 and 1957; that the marketing was done by Hairston and that Mrs. Whittle only received the benefit of ¼ of the proceeds of the overplanting; that the allotment notice and marketing cards were issued in the name of defendant Hairston. who filed the report of acreage, which was the practice for prior years of 1954 and 1955; that Mrs. Whittle had no actual knowledge of the planting of excess acreage by Hairston and did not authorize, permit or condone it; that Mrs. Whittle's farm manager, Weatherford (whose duties and services are undefined), gave her information that he received from the County Agent's office that Hairston planted an acreage of 5.10 acres in 1956 and 4.09 acres in 1957; that defendant Hairston, and he alone, was notified of the allotments.

Conclusions of Law.

The United States has filed an excellent and informative brief which states the nature of the case, the purposes of Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq., defines the Act's operations, explains the national marketing quota, the referendum, the plan of allocation of the national quota, the penalty provisions, the price support provisions, the regulations, and ably discusses the issues, seeking to apply the law to the facts of the case at hand.

Neither the wisdom nor the constitutionality of the Agricultural Adjustment Act and the regulations adopted pursuant thereto is challenged in the slightest by this Court, but we do not agree with the position of the Government in trying to hold Mrs. Whittle liable for something from which she received no benefits and of which she had no knowledge.

Equity and good conscience would say that the Government should not exact a penalty from an innocent person.

On the date of the first argument of this case, the Court requested the United States Attorney to ascertain from the general counsel for the Department of Agriculture whether this point had before been decided by the Federal Courts and to give us citation of the authorities. The reply from the general counsel is that the precise point has not been decided, which is amazing in view of the thousands of allotment cases that have doubtless arisen in the Federal Courts.

The opinion of the Fourth Circuit Court in the case of Usher v. United States, 1944, 146 F.2d 369, 370, where the Government sought to recover in a proceeding involving excess cotton grown, bears somewhat on the problem of apportionment of the penalty, stating:

"* * * The excess cotton available for marketing consisted of 81 bales, amounting to 37,447 pounds, upon which the penalty, at the rate of seven cents a pound, at the time of any marketing prior to the expiration of quotas on July 31, 1943, would be $2,621.29. The quota and the excess were apportioned among the defendant and his sharecroppers upon the basis of their respective interests in the acreage planted to cotton and, in accordance with this apportionment, the marketing penalty would be $1,825.67 for the defendant and $795.62 for the sharecroppers.

"A single red marketing card, accompanied by forms of marketing certificates in triplicate, was issued to defendant, as operator of the farm, in respect to all cotton produced by him and his sharecroppers in consequence of which the defendant became liable for all penalties. Marketing certificates, executed by

the defendant and his buyers and furnished by the latter to the Government, indicate the disposition by sale during the period August through December 1941 of 84 bales of cotton, amounting to 39,029 pounds, constituting all but 182 pounds of the quota cotton."

The marketing card in the case at bar was issued to Hairston, and Mrs. Whittle had no knowledge that the provisions of the tobacco production and marketing law were being violated. It would be a hardship to place on Mrs. Whittle the burden of paying the penalty for Hairston's misdoings.

The "producer" in the cotton penalty case above referred to was the one required to pay the penalty, as is true in the tobacco regulations, the definition reading:

> "(q) 'Producer' means a person who, as owner, landlord, tenant, sharecropper, or laborer is entitled to share in the tobacco available for marketing from the farm or in proceeds thereof."

It is the view of this Court that Mrs. Whittle was only a producer insofar as her benefits extended, and that she is not responsible for Hairston's production. Her interest as producer was limited to ¼ of the tobacco proceeds, and to the extent that her production exceeded the quota, the Court holds her liable and for no more.

Let us suppose Mrs. Whittle's farm had been located in Montana and that she let someone farm it on the basis of ¼ to the landowner of the proceeds from the wheat grown; that the marketing card was issued to the tenant, who handled the entire production and marketing; that the Montana tenant violated the wheat control law by sowing the entire farm in wheat; that the tenant sold the wheat, paid Mrs. Whittle her ¼, and lost his ¾ of the money. Conceivably, the ¾ received by the tenant may have been the full value of the entire farm. Would it be fair for the Government to take the farm to discharge the tenant's ¾ penalty?

Mrs. Whittle contributed ¼ (the land) and Hairston ¾ (the know-how and labor), to the production of the tobacco, and each were producers only to that extent.

The statute being a penal one should be construed strictly. Nowhere in the regulations is it provided that the sharecropper and the landowner shall be jointly liable.

Apparently Mrs. Whittle, after inheriting the land from her mother, just continued the arrangement with Hairston. She could only reasonably believe that Hairston would comply with the legal regulations in the production and marketing of tobacco. Hairston flies the coop and breaks the rules. Mrs. Whittle is willing to pay to the Government the amount which she, as landowner, innocently received from the excess production.

To the Court, this seems as far as equity and good conscience permits us to pursue Mrs. Whittle. This is neither a partnership case nor one of joint tort liability. It is simply one in which Mrs. Whittle, the landowner, contributed ¼ to the production of the tobacco by the use of her land. This was the extent that she could be defined as "producer", and it is only to that extent that this Court is willing to hold her liable.

Therefore, the Court holds that the United States recover of defendant, Whittle, the sum of $507.05, being her ¼ part of the marketing penalty, with interest on $288.02, the penalty for the year 1956, at the rate of 6% per annum from December 31, 1956, and with interest on the balance of $219.03, penalty for 1957 from December 31, 1957, plus costs; and that the United States recover of defendant, William B. Hairston, the sum of $1,521.14, being his ¾ of the marketing penalty, with interest on $864.04, the penalty for 1956, from December 31, 1956, and with interest on the balance of $657.06, penalty for 1957, from December 31, 1957, plus costs.