**UNITED STATES of America,**
**Plaintiff,**

v.

**Floyd E. APPLING and Harold Treybig,**
**Defendants.**

**Civ. A. No. 64–H–370.**

United States District Court
S. D. Texas,
Houston Division.

March 12, 1965.

Woodrow Seals, U. S. Dist. Atty., and James R. Gough, Asst. U. S. Dist. Atty., for plaintiff, United States.

M. W. Parse, Jr., of Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for defendant, Floyd E. Appling.

Bert L. Huebner of Harris, Salyer & Huebner, Bay City, Tex., for defendant, Harold Treybig.

GRAVEN, Senior District Judge (by assignment).

This is a civil action brought by the plaintiff against the defendants, Floyd E. Appling and Harold Treybig, to recover penalties assessed against them under the provisions of the Agricultural Adjustment Act of 1938, as amended, Section 1281 et seq., Title 7 U.S.C.A. Jurisdiction is based by Section 1376, Title 7 U.S.C.A. and Section 1345, Title 28 U.S.C.A. The case was submitted to the Court upon the record stipulated in a pretrial order. Under the Agricultural Adjustment Act of 1938, as amended, the Congress attempted to solve the problems resulting from the excess production of rice and other agricultural commodities. It provides that the Secretary of Agriculture shall determine a national acreage allotment for rice and apportion it among the states. That state acreage is then apportioned to producers or to farms. The provisions of the Act relating to rice differ in an important way from the provisions of the Act relating to tobacco, corn, wheat, cotton and peanuts. The provisions of the Act relating to those latter commodities provide only for apportionment to farms, not to producers. However, Section 1353, Title 7 U.S.C.A., relating to the apportionment of rice allotments, provides that they may be apportioned either to the land or to producers of rice. The Secretary of Agriculture had provided for an allocation of rice allotments to producers. During the earlier part of the period here involved, the County Committee having to do with the administration of crop allotments was known as the County ASCS Committee. Later it was known as the County ASC Committee.

The defendants, Floyd E. Appling and Harold Treybig, are residents of Wharton County, Texas. The defendant, Floyd E. Appling, was the owner of two hundred and forty acres of land situated in that county. In the latter part of 1957 the defendant, Floyd E. Appling, leased that land to the defendant, Harold Treybig, for a term of three years commencing January 1, 1958. The lease specified that the lessee had the right to alternate on that land between 80 to 100 acres for rice crop purposes. The lease specified that the lessee was to pay as rent for the same one-seventh of the rice crops grown by him thereon, which share of the crop was to be delivered in kind to a warehouse at El Campo, Texas, designated by the lessor from year to year.

During the negotiations for the lease the defendant Treybig represented to the defendant Appling that he had a producer

rice allotment. Before Appling leased the land to Treybig, he checked with the Wharton County ASCS Office. That agency confirmed the fact that Treybig held a producer rice allotment which would enable him to plant the contemplated rice crop without penalty. Treybig had at the time a valid allotment of 70 acres. Treybig was the active farmer. Appling's only interest in the matter was to receive his share of the rice as rent. Appling's leasing of the land to Treybig was induced by the representation on the part of the latter that he would produce rice crops on the land under his rice allotment, and Appling would not have leased the land to Treybig if the situation was to be otherwise.

In February, 1958, Treybig, without Appling's knowledge and consent but with the approval and knowledge of the Wharton County ASCS Committee, transferred the rice allotment for 1958 to a farm in Colorado County, Texas. In February, 1959, Treybig allocated his 1959 allotment to a farm in Colorado County, again without the knowledge or consent of Appling but with the knowledge and consent of the County Committee. In 1958 and 1959 Treybig planted and harvested rice crops on the tract leased from Appling. In 1958 Treybig planted 89.0 acres of rice on the Appling land without a rice allotment theretofore. In 1959 Treybig planted 118.3 acres of rice on the Appling land without a rice allotment theretofore. Following the harvesting of the 1958 crop, Treybig, in violation of the terms of his lease, did not deliver one-seventh of the crop in kind to Appling but harvested and sold the entire crop without notice to Appling. However, he did pay Appling the sum of $1,409.38 which represented one-seventh of the sale proceeds. Treybig harvested the 1959 crop early in August and sold it beginning in September. Treybig sold approximately two-thirds of the crop himself. The other one-third was first put by him into storage at a local warehouse.

In September, 1959, Appling, not having received his share of the 1959 crop, started an investigation. He then for the first time discovered the conduct of Treybig in connection with his rice allotment. He also discovered that one-third of the crop was in a local warehouse. Appling notified the County ASCS Committee as to the situation in regard to Treybig's rice allotment. He also advised the County Committee as to the presence of one-third of the crop in a local warehouse. That one-third was marketed under the auspices of the County ASCS Committee and credited against the claimed penalties in connection with the crop. Appling did not market separately any part of the 1959 crop. During the crop year 1958 Appling's land was overplanted by 89.0 acres of rice and during the crop year 1959 by 118.3 acres of rice. The acreage planted to rice on Appling's land in 1958 and 1959 was not measured by the ASCS until September, 1959. This was after the 1959 crop had been harvested and after the 1958 crop had been harvested and sold. Two of the members of the County Committee during the period of time in question traveled almost daily on a route past the Appling land and were aware that rice was being produced on that land. They had previously, as members of that Committee, approved the transfer of Treybig's rice allotted to a farm in another county. Notices of excess acreages for the crop years of 1958 and 1959 were mailed to both Appling and Treybig on October 7, 1959. Penalties for the year of 1958 in the amount of $6,449.49 were assessed on November 3, 1959, and corrected to $6,567.99. Penalties for the year 1959 in the amount of $8,572.77 were assessed on September 22, 1959, and were adjusted downward to $6,879.64 on June 23, 1960. The total penalties assessed amounted to $13,447.63. Written notices of farm marketing excesses were mailed to the defendants on November 3, 1959, and September 22, 1959, for the years 1958 and 1959 respectively. The Government received $2,849.88 as proceeds of the sale of one-third of the 1959 crop under the auspices of the County Committee. On July 12, 1960, Appling tendered his check

in the amount of $1,561.68, bearing the notation: "Floyd E. Appling apportionment of penalties and interest on Farm L–155 for 1958 and 1959 per your determination at conclusion of June 17, 1960 hearing in full settlement of penalties due by me," which check was accepted and cashed by the Government. In addition, sometime during the pendency of this matter Appling became entitled to an Agricultural Conservation Program Cost-Sharing Payment from the Government in the sum of $1,500.00. This sum has been retained by the Government and credited to the penalties claimed. The Government asks for judgment in the sum of $9,365.58, plus interest, against Appling and Treybig jointly and severally.

After assessment of the penalties, Appling made timely application to the County Committee for apportionment of the penalties. On June 23, 1960, the County Committee filed a document styled "Determination of Wharton County ASC Committee in Relation to Application for Downward Adjustment and Apportionment of the 1959 Farm Marketing Excess of rice—Farm L–155, Harold Treybig, Producer and F. E. Appling, Landlord." The Committee filed a similar document for 1958 on the same date. After determining the penalty due, the report (Pre-Trial Exhibit 2 relating to the 1959 crop) continued in the following language:

"This committee doubts that it has the authority under the provisions of Section 730.975(c) of the Rice Marketing Quota Regulations to approve the request made to apportion the farm marketing excess in any manner between the applicant, F. E. Appling, and the producer, Harold Treybig. We determine that all of the rice marketed from the farm was sold by Harold Treybig, and F. E. Appling's one seventh share of the rice crop produced on the farm was not marketed or disposed of by him separately. Nevertheless, in view of all the circumstances and information made available to this commit-

tee by investigation and by the applicant, we strongly feel that Mr. Appling should not be held liable for any, but if any, no more than one seventh of the adjusted farm marketing excess."

Substantially the same language was used in Pre-Trial Exhibit 2A relating to the 1958 crop. The meeting at which the determinations were made was attended by Henry C. Marshall, an employee of the Department of Agriculture, from the Texas ASCS State Office. He strongly objected to the action of the County Committee attempting to apportion the penalty or exonerate Appling completely. The above-mentioned documents were actually prepared by Marshall because of the County Committee's inexperience in expressing its conclusions in written determinations. It was the intent of the County Committee in executing the documents to exonerate Appling completely for any liability or, if this was not within its power to do, to apportion the penalties one-seventh to Appling and six-sevenths to Treybig in accordance with their respective interests in the crops. The issues and contentions of the parties, as set forth in the Pre-Trial Order, are as follows:

"1. Defendant Appling contends that the Committee on June 17, 1960, apportioned the penalties for overplanting in 1958 and 1959 and that such apportionment was made in proportion to the beneficial interests of Appling and Treybig in the crops, one-seventh and six-sevenths respectively. The Government denies this and asserts (a) that the written determination of June 23, 1960, a copy of which is attached hereto as Exhibit '2,' is in legal contemplation the act of the Committee and does not have the effect of an apportionment, and that (b) in any case the Committee was without power to apportion the penalty under the circumstances of this case because Appling did not in either year separately market his share of the crop, and that therefore Appling and Treybig each remain

jointly and severally liable for the full amount of the penalties assessed against the farm.

"2. Both Defendants, Appling and Treybig, contend that this suit is barred by the five-year statute of limitations, Title 28 U.S.C. § 2462, and that such statute began to run as to each crop on the date of its planting. The Government contends that the statute began to run thirty days after November 3, 1959, and September 22, 1959, for the years 1958 and 1959 respectively, which are the dates upon which written notice was given of the determination of excess and amount of penalty for the two crops. This suit was filed on July 28, 1964.

"3. Defendant Appling contends that, particularly in the case of one who did not knowingly overplant an allotment, Plaintiff cannot assess and recover penalties where such person had no opportunity because of defective administration of the law to avoid or postpone the penalties by adjusting the excess acreage, by storage or by other disposition of the excess rice. The Government denies that there has been defective administration of the law in this instance and contends that such penalties may be assessed at any reasonable time after the discovery of the fact of such overplanting.

"4. The Defendant Appling contends and the Government concedes that, had the crops been measured respectively in May or June of each year, when the measuring is customarily done, the fact of overplanting would have been discovered by the ASCS. However, the Government contends that there was no proper occasion to measure the crops since no allotment was allocated to the farm for either crop year, that for this reason failure to measure at the usual time was not defective administration of the law, and that this circumstance is therefore irrelevant.

"5. Defendant Appling contends that an accord and satisfaction was reached when his check in the amount of $1561.68 for one-seventh of the penalties unpaid was tendered, was accepted, and was cashed. The Government admits the receipt of this sum, but contends that it constitutes no accord and satisfaction, that no officer of the United States having legal power and authority to compromise a claim of the United States has done so in this case, and that the Defendant Appling in consequence remains liable for the full amount of the penalties, against which the aforesaid payment constitutes a credit.

"6. Defendant Appling contends that, if he were a producer of the 1958 and 1959 rice crops within the contemplation of law, he was a producer only to the extent of one-seventh of the crop, and that he has no greater liability than one-seventh of the penalty. The Government contends that he is a producer within the definition of Reg. Sec. 719.2 (t), 730.951(j) and 730.911(i) (j) and (k) (1958) and 730.1011(e) (f) and (g).(1959), and that as a result he is liable for the full penalty as a matter of law and without regard to his knowledge or lack thereof of any overplanting in fact.

"7. The Government admits that Appling is due a credit of $1500.00 based on an approved and performed cost-sharing project, a land-leveling operation on land owned by him in Matagorda County. This credit applies against any indebtedness found due to the United States, and in the event that none such is found to exist herein, he is entitled to recover this sum.

"8. Defendant Treybig contends that Plaintiff cannot assess and recover penalties after the crop had been planted, harvested, and sold, since he had no opportunity to avoid or postpone the penalties by adjust-

ing the excess acreage by storage or by other disposition of the rice, which adjustments are available to him whether the overplanting was intentional or unintentional. The Government contends that, in addition to the reasons above stated with regard to Defendant Appling for liability, Defendant Treybig had full knowledge of the fact of overplanting at the time of such overplanting, and cannot now complain.

"9. Under the peculiar circumstances of this case, in that the fact of overplanting determined in the initial assessment of penalties is not disputed by defendants, the Government does not contend that the fact that neither defendant appealed such determination by the County Committee deprives them of any otherwise meritorious defense that they might assert herein."

As noted, the United States claims that Appling and Treybig are jointly and severally liable for the penalties assessed and that the attempt of the County ASC Committee to apportion them was ineffective. This is the first issue to be considered by the Court.

It is not questioned that both Appling and Treybig were "producers" of rice under the Agricultural Adjustment Act of 1938, as amended, and the regulations promulgated thereunder. Section 730.-975(a) of Title 7, C.F.R., provides: "Each producer having an interest in the rice produced on any farm for which a farm marketing excess is determined shall be liable to pay the amount of penalty on the farm marketing excess as provided in this section." That regulation clearly provides for joint and several liability. The Agricultural Adjustment Act authorizes the Secretary to prescribe such regulations as are necessary for the enforcement of the Act. 7 U.S.C.A. § 1375. Section 1356(a) of Title 7 U.S.C.A., provides that "the producer shall be subject to a penalty on the farm marketing excess * * *." Appling makes the contention that the regulation imposing joint and several liability on the pro-

ducers of rice for a farm marketing excess penalty was beyond the rule-making power conferred upon the Secretary of Agriculture by Congress. The Court is of the view that the regulation was within the delegation of rule-making power conferred by Congress upon the Secretary of Agriculture and is a valid regulation.

Notwithstanding the joint liability provisions of § 730.975(a), the County Committee could, under the provisions of § 730.975(c) as it applied to the 1958 and 1959 crop years, apportion the penalty among producers upon application if certain conditions were met. These conditions were that the applicant show that:

(1.) "he is unable to arrange with the other producers on the farm for the payment of the penalty on the entire farm marketing excess,

(2.) "that his share of the rice crop produced on the farm is marketed or disposed of by him separately, and

(3.) "that he exercises no control over the marketing or disposition of the shares of the other producers in the rice crop."

When these conditions were met and the penalty apportioned, payment by the producer of his proportionate share of the penalty relieved him from liability for the remainder of the penalty. 23 F. R. § 730.975(c). There is no question here that Appling complied with conditions (1) and (3). It is conceded that he did not separately market any of the 1958 or 1959 crops because of Treybig's breach of the lease agreement in 1958 and his breach in 1959 and the fact that in 1959 approximately one-third of the crop was marketed under the auspices of the County Committee. Appling contends that since, under the provisions of the regulations, the excess may be stored and the penalty thereby avoided or postponed (7 C.F.R. §§ 730.980, 730.981 and 730.975(c)), it is not necessary that the producer actually market his proportionate share of the rice crop but merely that

he have a right to do so in order to take advantage of the apportionment provisions. It would seem that this is a construction to which the regulation does not lend itself. The regulation clearly contemplates (1) that the producer market his proportionate share of the crop and pay his proportionate share of the penalty, or (2) that the producer store or deliver to the Secretary his proportionate share of the crop and thereby avoid or postpone his proportionate share of the penalty. In the case at bar Appling did neither; and that he was prevented from doing so by forces beyond his control is of no consequence. The regulation clearly and unequivocally sets forth the conditions which must be met for the producer to take advantage of the apportionment provisions. If the Secretary had intended that innocence from misconduct excuse a producer from one or more of these conditions, he could have so provided by the exercise of his rule-making power.

The case of United States v. Whittle, 190 F.Supp. 826 (W.D.Va.1960), aff'd 287 F.2d 638 (4th Cir. 1961), lends no support to Appling's contention. In that case the United States sought to recover a penalty for overplanting of tobacco quota from a landlord and a tenant. The landlord was innocent of any knowledge or participation in the overplanting. The District Court held that the landlord was liable only for the portion of the penalty which corresponded with her interest in the crop. The Court of Appeals affirmed, expressly basing its opinion on the fact that the statutes and regulations dealing with tobacco contained no provision for joint and several liability, whereas such liability is expressly provided for in the case of certain other crops.

■ This Court is of the view that, under the applicable statutes and regulations, producers of rice on a single farm during the crop years 1958 and 1959 are jointly and severally liable for farm marketing excess penalties, unless such penalties are effectively apportioned by the County Committee. In this case there was no effective apportionment by the Committee. It was without power to do so because Appling neither marketed separately his proportionate share of the crop nor stored or delivered it to the Secretary to postpone or avoid payment of his proportionate share of the penalty as required by 7 C.F.R. § 730.975(c).

The defendant, Appling, contends that he has no liability for the penalties since he did not knowingly overplant the allotment, and even if his lack of knowledge is no defense the Government cannot now assess the penalty because of its failure to timely notify him of the excess acreage. This contention is based on the reasoning that, although the statute does not specifically require knowledge as a basis for liability, Appling is a "cooperating" farmer under the definition given that term by other relevant statutes and as such is entitled to certain governmental benefits and aids. It would be absurd, contends Appling, for Congress to extend him benefits as a cooperating farmer on one hand and withdraw them in the form of penalties for unknowingly exceeding his rice acreage allotment on the other.

■ Under the Agricultural Act of 1949 (7 U.S.C.A. § 1421 et seq.) a producer is entitled to aid by price support if he is a "cooperator". A cooperator is a producer on whose farm the acreage planted to the commodity does not exceed the farm acreage allotment. 7 U.S.C.A. § 1428(b). However, "For the purpose of this subsection, a producer shall not be deemed to have exceeded his farm acreage allotment unless such producer knowingly exceeds such allotment." 7 U.S.C.A. § 1428(b).

■ It is true, as the defendant contends, that in construing legislative enactments the Court will strive to avoid a construction which leads to absurd or futile consequences or hardship. United States v. Bryan, 339 U.S. 323, 338, 70 S. Ct. 724, 94 L.Ed. 884 (1950). But it is also well settled that the Court should construe the statute in a way consistent with the intent of the Legislature in enacting it. United States v. Bryan, supra. One of the primary purposes of the Agri-

cultural Adjustment Act of 1938, as amended, was to increase the market price of agricultural commodities, Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). Fulford v. Forman, 245 F.2d 145 (5th Cir. 1957); Allen v. David, 334 F.2d 592 (5th Cir. 1964). To that end the Act sought to limit production by the declaration of marketing quotas and the imposition of civil penalties to deter farmers from exceeding their quotas. Rodgers v. United States, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3 (1947); Wickard v. Filburn, supra.

■ An action for the collection of penalties under the Agricultural Adjustment Act is strictly civil in nature. Miller v. United States, 242 F.2d 392 (6th Cir. 1957), cert. den. 355 U.S. 833, 78 S.Ct. 48, 2 L.Ed.2d 44; United States v. Stangland, 137 F.Supp. 539 (N.D.Ind. 1956), aff'd 7 Cir., 242 F.2d 843. In cases of this sort, penalties are imposed without regard to knowledge or consciousness of wrongdoing. See, United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943).

■ The Court therefore is of the view that innocence of any knowledge of the farm marketing excess by the defendant Appling would not operate to relieve him of liability for any penalties due under the Act.

■ Appling further contends that, because of defective administration of the law by the plaintiff in not measuring the acreage planted to rice for both years until after the 1959 crop was harvested, he had no opportunity to avoid or postpone the penalties by adjusting the acreage or storage of the excess rice and that, therefore, the plaintiff cannot assert penalties. The Government contends that under the circumstances of this case it had no duty to measure the crops before it did and, therefore, there was no defective administration of the law.

It is manifestly evident, from the statutes and regulations pertaining to rice, that a measurement of the acreage planted to rice during the crop year before the rice is harvested is contemplated. Section 1374 of Title 7 U.S.C.A., provides in pertinent part as follows:

"(a) The Secretary shall provide, through the county and local committees, for measuring farms on which corn, wheat, cotton, peanuts, or rice is produced and for ascertaining whether the acreage planted for any year to any such commodity is in excess of the farm acreage allotment for such commodity for the farm under this subchapter.

"(c) If the acreage determined to be planted to any basic agricultural commodity on the farm is in excess of the farm acreage allotment, the Secretary shall by appropriate regulations provide for a reasonable time prior to harvest within which such planted acreage may be adjusted to the farm acreage allotment."

The Secretary, by regulations promulgated under authority given him by the Act, has set the date for disposal of excess rice acreage at not more than thirty days prior to the date harvest normally begins in the county or state (July 15 for Wharton County, Texas). 7 C.F.R. § 730.955(b).

It thus appears that the purpose for requiring the measurement be done during the current crop year is to provide the producer with an opportunity to postpone or avoid any penalties by disposing of the excess acreage. A fortiori, if the county committee does not measure the acreage during the crop year, a producer who did not knowingly overplant an allotment has no opportunity to take advantage of the alternatives to paying the penalties granted him by the statute and regulations.

The case of United States v. Lynn, 132 F.Supp. 605 (E.D.Ky.1955), is somewhat similar to the case at bar. In that case the United States sued a producer of tobacco to recover penalties for overplanting his acreage allotment, basing its contentions on a measurement of the acreage conducted after the crop had been harvested. The Court, in dismissing the complaint, held that the evidence was insufficient to show that the acreage plant-

ed to tobacco in the year in question was in excess of the defendant's acreage allotment. However, the Court went on to discuss the problems arising from a tardy measurement of the acreage by the local Committee. The following language from the case, at page 607, seems particularly germane:

"It seems obvious that for the State Committee to defer remeasurement of the area cultivated in tobacco until long after the farmer has harvested and marketed his crop, as was done in this case, necessarily results in denying the farmer the opportunity to protect himself from penalty by the means thus provided. * * * "

Again, at page 607:

"It seems clear that under the regulations and instructions promulgated pursuant to the Agricultural Adjustment Act of 1938, as amended, the authority of the State and County Committees to remeasure tobacco acreage with a view to imposing penalties is limited to the period prior to the time the tobacco crop is marketed, and that a measurement deferred until after that time is ineffective to warrant imposition of penalty. Otherwise, every producer of tobacco would remain indefinitely under the hazard of having penalties imposed upon him without the opportunity to dispose of excess tobacco * * *."

The above quoted language from Lynn was urged in Gajewski v. United States, 327 F.2d 239 (8th Cir. 1964), as authority for the proposition that farm marketing excess notices must be given during the particular marketing year involved. The Court, in Gajewski, did not speak with disapproval of Lynn but distinguished it on the ground that in Gajewski there was no application by the producer for an allotment and the Committee had no reason to measure the acreage during the crop year involved.

The United States, in the case at bar, concedes that had it timely measured the acreage Appling could have avoided the penalty but contends that since no producer allotment was ever allocated to farm L-155 (Appling's farm) it had no reason to measure the acreage during the crop years involved and, therefore, the fact that it did not timely measure the acreage should not prevent the recovery of penalties. In this connection there are two matters to be noted. The first is that 7 C.F.R. § 730.954 provides that the "County Committee shall provide for the measurement of all farms in the county having a rice acreage allotment *and any other farm in the county on which the committee has reason to believe there is rice which could be available for harvest* * * *." (Emphasis supplied). The second, as heretofore noted, is that at least two members passed the farm on which the rice operation was being conducted daily during the years in question and knew that rice was being grown on Appling's farm. The County Committee knew during both 1958 and 1959 that no producer allotment had been allocated to farm L-155; that the defendant Treybig had allocated his allotment to a farm in Colorado County; and that rice was being grown on Appling's farm. Yet no measurement, for the purpose of imposing penalties, of the acreage planted to rice for either of the years in question was made until after the 1959 crop had been harvested. The good faith of the defendant Appling is not in question. It was he who ultimately discovered the overplanting and promptly reported it to the Committee. The regulations promulgated by the Secretary of Agriculture have a two-way character. They are for not only the protection and benefit of the United States but also for the protection and benefit of those who are classified as producers. In the present case the United States relies upon certain provisions of those regulations for the purpose of imposing penalty liability. However, there were certain other provisions in those regulations relating to the imposition of such liability which the United States ignored or failed to follow. The members of the County Committee had reason to believe that rice was being

raised on the Appling farm which would be available for harvest. Under the regulations it was the duty of that Committee to cause that rice to be measured before it was harvested. Since this was not done, Appling was not given the opportunity provided for in the regulations to deal with the rice in such a way as to meet the regulations. The maladministration or defective administration referred to on the part of the County Committee in connection with the rice resulted in Appling being boxed into the situation created by the wrongful conduct of Treybig in connection with the planting. It would seem that where the United States ignores or fails to follow is own regulations in connection with the imposition of penalties, and where by reason thereof a producer who is without personal fault on his part is denied an opportunity for taking corrective measures afforded him by the regulations, the United States is not entitled to recover the claimed penalties. It is the holding of the Court that Appling is not liable to the United States for the claimed penalties.

The defendant Treybig had knowledge of the overplanting and was not prevented from avoiding the penalty, if he had desired to do so, by the failure of the United States to timely measure the acreage. The Court therefore holds that he is not entitled to be exonerated from liability for the penalties by such failure to timely measure the acreage.

Appling contends that the check for $1,561.68 dated June 12, 1960, which purportedly was in full settlement of his penalty liabilities, constituted an accord and satisfaction. In view of the holding of the Court in connection with the matter of his penalty liabilities, it is not necessary to pass upon that question.

As heretofore noted, both defendants Appling and Treybig contend that the present suit is barred by the five-year statute of limitations. Both the 1958 and 1959 crops were planted in March and harvested in August of each year. This cause was filed July 28, 1964, more than five years after both the 1958 and 1959

crops were planted and more than five years after the 1958 crop was harvested and sold. The applicable statute is Section 2462 of Title 28 U.S.C.A., which provides for a limitation period of five years for any suit or proceeding for the enforcement of any civil fine, penalty or enforcement from the date the claim first accrued. The defendants contend that the penalties "accrued" within the meaning of the statute at the time the overplanting occurred in March of each year. The United States, on the other hand, contends that the penalties did not accrue until it was administratively determined that the overplanting occurred and notices of farm marketing excess were mailed to defendants. This occurred in September, 1959, within five years of the date on which the action was commenced.

■ The question as to the matter of the statute of limitations is troublesome. There is a lack of authority on the question. However, the reasoning of the Court in reaching its conclusion in the case of United States v. Lynn, supra, would seem to be applicable to that question.

If the penalty does not accrue until the United States makes an administrative determination that it is due, the United States has within its power to prolong the period of limitations and the producer of rice "would remain indefinitely under the hazard of having penalties imposed upon him * * *." United States v. Lynn, supra, 132 F.Supp. at 607. The Court is of the view that such is not the case.

Section 1356(a) of Title 7 U.S.C.A., provides in pertinent part as follows: "Whenever farm marketing quotas are in effect with respect to any crop of rice, the producer shall be subject to a penalty on the farm marketing excess * * *." "Farm marketing excess" is defined as the normal production of the acreage planted to rice in excess of the farm acreage allotment. 7 U.S.C.A. § 1355; 7 C.F.R. § 730.959. Thus, although the act of overplanting is a necessary condition precedent to the accrual of penalties,

it is not by that act alone that the penalties accrue.

Section 730.975(b) of Title 7, C.F.R., provides that penalties on the farm marketing excess must be paid not later than sixty days after the date on which the harvesting of rice is normally completed in the area in which the farm is situated, or not later than thirty days after notice of farm marketing excess is mailed. It is not clear from the regulations just when the farm marketing excess notice must be mailed (see 7 C.F.R. §§ 730.960, 730.961, and 730.962(a) (1)), but it is evident that the intent of the regulations is that it be mailed early enough to afford the producer an opportunity to store the excess or deliver it to the Secretary in order to avoid or postpone payment of penalties. See 7 C.F.R. §§ 730.-961, 730.980 and 730.981.

It thus appears that it is the production from the excess acreage that gives rise to the penalties, not the act of overplanting as contended by the defendants. The Secretary has determined, pursuant to authority given him by the Agricultural Adjustment Act of 1938, as amended, the date on which rice harvest is normally substantially completed in all counties of Texas. That date is October 20. The Court holds that the claim for penalties for farm marketing excess accrued on October 20, 1958, for the 1958 crop and on October 20, 1959, for the 1959 crop. The claim for penalties arising out of the 1958 crop is barred by Section 2462 of Title 28 U.S.C.A. The Court further holds that since the complaint in this action was filed within five years from the date the claim for penalties in connection with the 1959 crop accrued such claim is not barred by said Section 2462.

The penalties assessed for the 1959 crop as adjusted amounted to $6,879.64. The United States received and retained the proceeds of one-third of the 1959 crop marketed under the auspices of the County Committee, leaving $4,029.76 as the unpaid balance of the 1959 penalties. The United States asks interest on the penalties at the rate of six per cent per annum from June 12, 1960.

It is the holding of the Court that it has jurisdiction of the subject matter of this action and the parties thereto.

It is the further holding of the Court that the United States is not entitled to recover any of the claimed penalties from the defendant Floyd E. Appling.

It is the further holding of the Court that the United States is entitled to recover from the defendant, Harold Treybig, as penalties for the 1959 crop the sum of $4,029.76, with interest thereon at the rate of six per cent per annum from June 12, 1960.

It is the further holding of the Court that the defendant, Floyd E. Appling, is entitled to recover from the United States the principal sum of $1,561.68 representing the proceeds of his check dated June 12, 1960, which proceeds were retained by the United States, and the principal sum of $1,500.00 due him in connection with a conservation project on his Matagorda County farm, payment of which has been withheld by the United States, together with interest on those sums as provided by law.

The foregoing shall constitute the Findings of Fact and Conclusions of Law herein.

It is ordered that judgment shall be entered in accord with those Findings and Conclusions.